UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE GIBSON,

                         Plaintiff,

v.                                                                          6:17-CV-0608
                                                                            (GTS/TWD)
NEW YORK STATE OFFICE OF MENTAL
HEALTH; CENTRAL NEW YORK
PSYCHIATRIC CENTER; JOHN DOE(S);
and JANE DOE(S),

                         Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

BOSMAN LAW FIRM LLC                                A.J. BOSMAN, ESQ.
   Counsel for Plaintiff
201 West Court Street
Rome, New York 13440

HON. ERIC T. SCHNEIDERMAN                      TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Christine Gibson

("Plaintiff") against the New York State Office of Mental Health ("NYSOMH"), the Central

New York Psychiatric Center ("CNYPC"), and John Does(s) and Jane Doe(s) (collectively

"Defendants") pursuant to the Family Medical Leave Act ("FMLA"), the New York State

Human Rights Law ("NYSHRL"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and

the Age Discrimination in Employment Act ("ADEA"), is Defendants' motion for judgment on

the pleadings with regard to three of the four claims in Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 12.)  For the reasons set forth below, Defendants' motion is granted.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Amended Complaint[1]

Generally, liberally construed, Plaintiff's Amended Complaint asserts four causes of action.  (Dkt. No. 2 [Pl.'s Am. Compl.].)  First, Plaintiff claims that Defendants willfully denied her request for leave to care for her daughter under the FMLA on or after February 28, 2013 ("First Claim").  (*Id.* at ¶¶ 17-22.)

Second, Plaintiff claims that Defendants discriminated against her in matters related to her employment because of her gender and age in violation of the NYSHRL; specifically, Plaintiff alleges that Defendants denied her request for a hardship accommodation in the form of a shift change in order to allow her to care for her grandsons, of whom she became the legal custodian in October 2015, while granting hardship accommodations for male and younger employees ("Second Claim").  (*Id.* at ¶¶ 9-13, 23-25.)

Third, Plaintiff claims that Defendants discriminated against her because of her gender in violation of Title VII when they denied her request for a hardship accommodation (Third Claim").  (*Id.* at 26-30.)

---

[1]      On August 9, 2016, Plaintiff filed her original Complaint in this action in Oneida County Supreme Court, asserting claims under the FMLA and NYSHRL.  (Dkt. No. 12, Attach. 2; Dkt. No 12, Attach. 3, at ¶¶ 17-25 [Pl.'s Compl.].)  On March 13, 2017, Plaintiff filed a motion to amend her Complaint and on May 10, 2017, that motion was granted.  (Dkt. No. 13, Attach. 2, at 14-18, 41-42].)  On May 22, 2017, Plaintiff filed the Amended Complaint, which included additional claims under Title VII and the ADEA.  (Dkt. No. 12, Attach. 2; Dkt. No. 2, at ¶¶ 26-33 [Pl.'s Am. Compl.].)  Pursuant to Defendants' petition for removal of June 2, 2017, this action was removed from the Oneida County Supreme Court to this Court on June 2, 2017. (Dkt. No. 1.)

Fourth, Plaintiff claims that Defendants discriminated against her because of her age in violation of the ADEA when they denied her request for a hardship accommodation ("Fourth Claim"). (*Id.* at ¶¶ 31-33.)

**B.      Parties' Briefing on Defendants' Motion for Judgment on the Pleadings**

**1.      Defendants' Memorandum of Law**

Generally, Defendants move to dismiss Plaintiff's Second, Third, and Fourth Claims for three reasons. (Dkt. No. 12, at 1-10 [Defs.' Mem. of Law].) First, Defendants argue that, as to Plaintiff's Third and Fourth Claims, Plaintiff failed to file those claims within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 4-6.) Specifically, Defendants note that the letter was issued on December 13, 2016, but that Plaintiff did not file the Amended Complaint asserting these claims until May 22, 2017, 160 days later. (*Id.* at 4-5.) Defendants note that Plaintiff filed her motion for leave to file an amended claim exactly 90 days after the right-to-sue letter was issued, but argues that the act of seeking leave to file an amended claim is not the same as actually filing that amended claim. (*Id.* at 5-6.)

Second, Defendants argue that, even if the Third and Fourth Claims are not time-barred, Plaintiff had failed to state a claim upon which relief can be granted because she has failed to allege facts plausibly suggesting that she has suffered an adverse employment action to support those claims. (*Id.* at 6-9.) Defendants argue that the denial of a requested shift change does not constitute an adverse employment action. (*Id.* at 8-9.)

Third, Defendants argue that Plaintiff's Second Claim is barred by the doctrine of sovereign immunity under the Eleventh Amendment because the NYOMH is a state

governmental agency and the CNYPC is a hospital operated by that government agency.  (*Id.* at 9-10.)  Defendants argue that the NYSHRL does not contain any waiver of sovereign immunity that would make the Defendants subject to suit.  (*Id.*)

>    2.    **Plaintiff's Opposition Memorandum of Law**

Generally, Plaintiff asserts two arguments in opposition to Defendants' motion.[2]  (Dkt. No. 13, Attach. 3, at 7-11 [Pl.'s Opp'n Mem. of Law].)   First, Plaintiff argues that her Third and Fourth Claims were timely filed because the filing of the motion to amend the Complaint (accompanied by her proposed Amended Complaint) tolled the statute of limitations.  (*Id.* at 8-10.)  Plaintiff also argues that the relation-back doctrine applies in this case because the Third and Fourth Claims arose from the same transactions as did the claims asserted in the original Complaint, and the new and original claims are so closely related that the original claims gave Defendants reasonable notice of the new claims.  (*Id.* at 9-10.)

Second, Plaintiff argues that she has alleged facts plausibly suggesting an adverse action to support her Third and Fourth Claims, because courts have found that a shift change disrupting an employee's childcare might constitute an adverse action.  (*Id.* at 10-11.)  Plaintiff additionally requests that, should the Court find that she has not alleged sufficient facts to allege an adverse action, she be permitted an opportunity to amend her Amended Complaint.  (*Id.* at 11.)

---

[2]    Along with her opposition to Defendants' motion, Plaintiff filed a cross-motion to remand to state court; however, on January 17, 2018, Plaintiff filed a letter withdrawing her cross-motion to remand.  (Dkt. No. 13, Attach. 3, at 7 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 23.) The Court therefore need not, and does not, consider the merits of Plaintiff's arguments related to that cross-motion to remand.

### 3.    Defendants' Reply Memorandum of Law

Generally, Defendants assert three arguments in reply to Plaintiff's arguments.  (Dkt. No. 16, at 3-7 [Defs.' Reply Mem. of Law].)  First, Defendants re-iterate their argument that Plaintiff's Third and Fourth Claims are untimely.  (*Id.* at 3-4.)

Second, Defendants argue that, although Plaintiff now alleges that the denial of her request for a shift change disrupted her ability to care for her grandchildren, she did not allege any particular child-care inconveniences caused by her current shift; Defendants argue that, under the applicable law, (a) such particular inconveniences are required because the cases relied on by Plaintiff merely stand for the point of law that a shift change *could possibly* rise to the level of adverse action, and (b) Plaintiff's subjective belief that her shift is inconvenient is not sufficient to state an adverse action.  (*Id.* at 5-7.)  Defendants also argue that Plaintiff has not alleged that the comparators identified in the Amended Complaint were accommodated with shift changes due to child care needs.  (*Id.*)

Third, Defendants argue that, by failing to oppose Defendants' sovereign immunity arguments, Plaintiff has implicitly conceded that the doctrine of sovereign immunity bars her Second Claim.  (*Id.* at 7.)

## II.    GENERAL LEGAL STANDARDS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency

of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks

and citations omitted).  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

## III.   ANALYSIS

### A.     Whether Plaintiff's Third and Fourth Claims Were Timely Filed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 13, at 9-10 [Pl.'s

Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Court notes at the outset that it need not determine whether the filing of the motion

to amend tolled the statute of limitations because Plaintiff's claims are timely pursuant to the

relation-back doctrine.

_____

[3]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

Rule 15(c)(1) of the Federal Rules of Civil Procedure states, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).[4]  Plaintiff's Second Claim pursuant to the NYSHRL (which she asserted for the first time in the original Complaint) was based on gender and age discrimination arising from the denial of her request for a hardship accommodation in the form of a shift change.  (Dkt. No. 2, at ¶¶ 9-15, 23-25 [Pl.'s Am. Compl.]; Dkt. No. 12, Attach. 3, at ¶¶ 9-15, 23-25 [Pl.'s Compl.].)  This alleged discriminatory denial of a hardship accommodation is also the basis for the Third Claim (pursuant to Title VII for gender discrimination) and the Fourth Claim (pursuant to the ADEA for age discrimination), asserted in the Amended Complaint.  (Dkt. No. 2, at ¶¶ 9-15, 26-33 [Pl.'s Am. Compl.].)  Because Plaintiff's Third and Fourth Claims are based on the same "conduct, transaction, or occurrence" as her Second Claim in the original Complaint, the Court finds that her Third and Fourth Claims relate back to August 9, 2016, the date of the original Complaint.  (Dkt. No. 12, Attach. 3 [Pl.'s Compl.].)  Furthermore, although Plaintiff had not yet been issued a right-to-sue letter from the EEOC when she filed her original Complaint, a plaintiff may file an action before receiving her right-to-sue letter where (1) the state was not precluded from performing its administrative duties, and (2) there has been no showing that the defendant was prejudiced.  *Dillon v. West Publ'g Corp.*, 409 F. App'x 152, 154 (9th Cir. 2011).

---

[4]      A strong argument exists that, because both the filing of the original Complaint and the filing of the Amended Complaint occurred in state court, the New York relation-back rule applies, rather than the federal relation-back rule.  *See e.g.*, *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).  However, because the Court does not discern a material difference between these two rules under the circumstances, the Court will apply the federal rule.

Finally, because the original Complaint was filed at least 60 days after the filing of her

EEOC charge regarding her ADEA claim, and at least 180 days after the filing of her EEOC

charge regarding her Title VII claim, there existed a valid pleading to which the ADEA and Title

VII claims could relate back.  *Rogers v. Conmed, Inc.*, 09-CV-3397, 2010 WL 3056666, at *3

nn. 6-7 (D. Md. Aug. 3, 2010).

### B.   Whether the Amended Complaint Alleges Facts Plausibly Suggesting that Plaintiff Suffered an Adverse Employment Action as to Her Third and Fourth Claims

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendants' memoranda of law.  (Dkt. No. 12, Attach. 4, at 6-9 [Defs.'

Mem. of Law]; Dkt. No. 16, at 4-7 [Defs.' Reply Mem. of Law].)  To those reasons, the Court

adds the following analysis.

As Defendants correctly note, Plaintiff's claims for discrimination under Title VII and

the ADEA require that Plaintiff suffer an adverse action at the hands of the Defendants.  *See*

*Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304 (2d Cir. 2017)

("To state a claim for employment discrimination under Title VII, 'a plaintiff must plausibly

allege that [1] the employer took adverse action against him, and [2] his race, color, religion, sex,

or national origin was a motivating factor in the employment decision.'"); *Galabya v. New York*

*City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) ("To prevail on an ADEA claim . . . 'the

plaintiff must first establish a *prima facie* case by showing membership in a protected class,

qualification for the position, an adverse employment action, and circumstances that give at least

minimal support to an inference of discrimination.'").  "'A plaintiff sustains an adverse

employment action if he or she endures a materially adverse change in the terms and conditions

11

of employment.'"  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)

(applying this standard to a Title VII claim); *Galabya*, 202 F.3d at 640 (applying this standard to

an ADEA claim).  "'An adverse employment action is one which is more disruptive than a mere

inconvenience or an alteration of job responsibilities.'" *Vega*, 801 F.3d at 85.  The Second

Circuit has found examples of adverse employment actions to include "termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation.'" *Id.*

  Here, Plaintiff alleges that Defendants' failure to grant her requested shift change to

accommodate her child care needs was an adverse employment action.  (Dkt. No. 2, at ¶¶ 9-15,

26-30 [Pl.'s Am. Compl.].)  In support of this argument, Plaintiff cites two cases in which courts

in this circuit found that shift changes disrupting the employee's child care routine were adverse

employment actions.  (Dkt. No. 13, Attach. 3, at 10-11 [Pl.'s Opp'n Mem. of Law].)  However,

those two cases are not applicable to the situation present here.  Notably, the cases cited by

Plaintiff made that conclusion in situations where the employee-plaintiffs' work schedules were

changed (causing unexpected difficulties with childcare routines or expectations), whereas, in

this case, Plaintiff is alleging that the *failure* to change her schedule based on changes in her

childcare needs is an adverse action.  *See Amador v. All Foods, Inc.*, 12-CV-1715, 2013 WL

1306305, at *5 (E.D.N.Y. Feb. 20, 2013) (finding that the plaintiff had sufficiently alleged an

adverse employment action based on her transfer from the day shift to the graveyard shift

immediately before she was to give birth); *Forsythe v. New York City Dept. of Citywide Admin.*

*Servs.*, 733 F. Supp. 2d 392, 401 (S.D.N.Y. 2010) (finding a triable issue of fact where the

plaintiff alleged an adverse employment action as a result of a "shift change [that] severely disrupted his child care routine and ability to spend time with his son"); *see also Velazquez v. City of New York*, 16-CV-9606, 2017 WL 6948357, at *4 (S.D.N.Y. Dec. 13, 2017) (noting that "[a] shift change may be sufficiently adverse where, as here, a disrupted child care routine is the alleged outcome").  Although Plaintiff's child care needs presumably changed somehow based on her obtaining legal custody of her grandsons in October 2015, she has not been subjected to a shift change.  The cases cited in support of Plaintiff's argument therefore do not suggest that this Court should find that Plaintiff has sufficiently alleged an adverse employment action based on Defendants' failure to grant her a shift change.

   As Defendant argues, Plaintiff's Amended Complaint does not allege any facts plausibly suggesting how Defendants' refusal to grant her a shift change objectively caused a negative effect related to child care that would rise to the level of an adverse effect on the terms, privileges, or conditions of her employment.  *See Anyachebelu v. Brooklyn Hosp. Ctr.* 16-CV-3159, 2017 U.S. Dist. LEXIS 114290, at *27-29 (E.D.N.Y. July 20, 2017) (finding that a denial of a request to change from a night shift to a day shift did not constitute adverse employment action); *Goins v. Bridgeport Hosp.*, 11-CV-0560, 2013 WL 1193227, at *5 (D. Conn. Mar. 25, 2013) (finding a denial of a shift change to the day shift was not an adverse employment action because plaintiff "was not hired for day shifts; therefore, the denial of her requests did not constitute a change in her employment"), *aff'd*, 555 F. App'x 70 (2d Cir. 2014); *Harris v. City of New York*, 03-CV-1593, 2006 WL 2034446, at *4 (E.D.N.Y. July 17, 2006) (finding that the plaintiff failed to establish an adverse employment action based on denials of her requests for a shift change because, although she alleged that the denial prevented her from "meeting her needs

13

as a single parent creating a 'serious hardship,'" "'such subjective, personal disappointments do not meet the objective indicia of an adverse employment action'"); *Bunis v. Runyon*, 94-CV-2063, 1997 WL 639241, at *3-4 (S.D.N.Y. Oct. 16, 1997) (finding that the plaintiff had not offered any evidence to show that denial of a shift change adversely affected the terms, privileges, duration, or condition of her employment and therefore had not shown that the denial was an adverse employment action). Rather, Plaintiff merely pleads that she became the legal custodian of her grandsons in October 2015 and requested a hardship accommodation allowing her to be scheduled on the day shift "so she could care for her family," which was denied. (Dkt. No. 2, at ¶¶ 9-12 [Pl.'s Am. Compl.].)

Because Plaintiff's Amended Complaint does not contain sufficient factual allegations to plausibly allege that she has suffered an adverse employment action, she has not stated a Title VII or ADEA claim upon which relief can be granted. Therefore, the Court finds that Defendants' motion to dismiss on this issue should be granted and Plaintiff's Third and Fourth Claims should be dismissed.

### C.    Whether the Eleventh Amendment Bars Plaintiff's Second Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 12, Attach. 4, at 9-10 [Defs.' Mem. of Law]; Dkt. No. 16, at 7 [Defs.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit,

which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn. 2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). Here, the Court finds that, at the very least, Defendants have met that modest threshold burden with regard to this argument.[5]

The Eleventh Amendment of the United States Constitution bars suits by citizens against a State government in federal court unless the state has waived that immunity. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of the state." *Woods*, 466 F.3d at 236 (quoting *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 [1997]). "[A] governmental entity is entitled to Eleventh Amendment immunity only if 'it is more like an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" *Woods*, 466 F.3d at 236. "In determining whether a putative state entity is, in

---

[5]      Alternatively, the court can deem, and does deem, the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument). *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made—i.e., referencing some claims or defenses but not others—a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

fact, an arm of the state, courts look to 'the relationship between the State and the entity in question.'" *Id.* A suit against the State is "barred regardless of whether it seeks damages or injunctive relief," other than in cases where the plaintiff challenges "the constitutionality of a state official's action." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (citing *Cory v. White*, 457 U.S. 85, 91 [1982]; *Missouri v. Fiske*, 290 U.S. 18, 27 [1933]; *Ex parte Young*, 209 U.S. 123 [1908]).

"[I]t is well-settled that 'the Eleventh Amendment bars the adjudication of pendent state law claims against non-consenting state defendants in federal court.'" *Fanelli v. New York*, 51 F. Supp. 3d 219, 232 (E.D.N.Y. 2014) (quoting *Raygor v. Regents of the Univ. of Minnisota*, 534 U.S. 533, 540-41 [2002]). Courts in the Second Circuit have found that NYSHRL does not include a waiver of New York State's sovereign immunity to suit in federal court. *See Fanelli*, 51 F. Supp. 3d at 232-33 (collecting cases); *see also Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015) ("New York State has not consented to suit under [NYSHRL]."); *Quadir v. New York State Dept. of Labor*, 39 F. Supp. 3d 528, 537-38 (S.D.N.Y. 2014) ("New York has not waived its Eleventh Amendment immunity for NY[S]HRL suits in federal court."); *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220 (N.D.N.Y. 2014) (Hurd, J.) ("New York has not waived its sovereign immunity from . . . NYSHRL claims in federal court.").

Plaintiff's claims under the NYSHRL against the NYSOMH are barred by the Eleventh Amendment because, as a state agency, it is "for practical purposes, . . . the alter ego of the state." *Delaney v. Montgomery Transitional Servs., Inc.*, 11-CV-0684, 2011 WL 6987297, at *2 (N.D.N.Y. Nov. 17, 2011) (Treece, M.J.) *Report-Recommendation adopted by* 2012 WL 75317 (N.D.N.Y. Jan. 10, 2012) (Sharpe, J.); *Kirwin v. New York State Office of Mental Health*, 665 F.

Supp. 1034, 1037 (E.D.N.Y. 1987) (finding claims against the NYSOMH were barred by the Eleventh Amendment based on its status as a state agency).  Additionally, as noted above, courts have recognized that the NYSHRL contains no waiver of sovereign immunity.  *Fanelli*, 51 F. Supp. 3d at 232-33; *Soloviev*, 104 F. Supp. 3d at 244; *Quadir*, 39 F. Supp. 3d at 537-38; *Jackson*, 63 F. Supp. 3d at 220.  Plaintiff's Second Claim is therefore barred by the Eleventh Amendment as to the NYSOMH.

Additionally, as to the CNYPC, courts have found that psychiatric centers operated by the NYSOMH are "arms of the state entitled to sovereign immunity."  *See Limwongse v. New York State Office of Mental Health*, 249 F. App'x 862, 862-63 (2d Cir. 2007) ("[W]e agree with the district court that, because the [NYSOMH] and [one of its psychiatric centers] are state agencies, they are protected by Eleventh Amendment immunity from appellant's suit for monetary damages."); *Dimps v. New York State Office of Mental Health*, 777 F. Supp. 2d 659, 661-62 (S.D.N.Y. 2011) (finding that the defendants, including two psychiatric centers operated by NYSOHM, were immune from the plaintiff's NYSHRL claims in federal court based on the Eleventh Amendment).  Therefore, because the CNYPC is an arm of the state and the NYSHRL does not contain a waiver of the state's right to suit on such claims, Plaintiff's Second Claim under the NYSHRL is also barred by the Eleventh Amendment as to the CNYPC.

### D.    Whether the Eleventh Amendment Also Bars Plaintiff's Fourth Claim

The Court notes also that, although Defendants do not request dismissal of Plaintiff's Fourth Claim on the alternative ground that the Court lacks subject-matter jurisdiction over that claim based on the doctrine of sovereign immunity, the Court may address the issue *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3); *Jehnsen v. New York State Martin Luther King, Jr. Inst. for*

17

*Nonviolence*, 13 F. Supp. 2d 306, 309 (N.D.N.Y. 1998) (Kahn, J.) ("Eleventh Amendment immunity is a jurisdictional bar that can be raised *sua sponte* by the court because it 'affects our subject matter jurisdiction.'").  Prior decisions of the Supreme Court and courts within the Second Circuit indicate that the ADEA does not include a valid abrogation of a states' sovereign immunity.  *Skalafuris v. City of New York*, 444 F. App'x 466, 468 (2d Cir. 2011) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91-92 [2000]); *Darcy v. Lippman*, 356 F. App'x 434, 436 (2d Cir. 2009); *Griffith v. New York State Dept. of Health*, 14-CV-1128, 2015 WL 454991, at *6 (N.D.N.Y. July 28, 2015) (McAvoy, J.); *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275-76 (N.D.N.Y. 2012) (Hurd, J.).  Because there is no indication that New York State has consented to suit in federal court on ADEA claims, Plaintiff's Fourth Claim is also barred by the Eleventh Amendment as to both the NYSOMH and the CNYPC.  As a result, Plaintiff's Fourth Claim is dismissed on this alternative ground.[6]

### E.   Whether the Above-Described Dismissals Should Be Only Without Prejudice

Although Plaintiff did not file a motion to amend,[7] she did request in her opposition memorandum of law that, if the Court finds that her Third and Fourth Claims lack necessary specificity, she be permitted leave to amend these claims to correct their identified deficiencies.

---

[6]      The Court notes that "[t]he Supreme Court has held that Congress, by amending Title VII in 1972 to include state and local governments as 'employers,' expressed a clear intention to abrogate the states' Eleventh Amendment immunity from suit under Title VII." *Brown v. New York State Dept. of Corr. Servs.*, 583 F. Supp. 2d 404, 413 (W.D.N.Y. 2008) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n.2 [1976]).  Plaintiff's Third Claim pursuant to Title VII is therefore not barred by Eleventh Amendment sovereign immunity.

[7]      The Second Circuit has noted that "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." *Porat v. Lincoln Towers Comty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  Of course, the Court may deny such an informal request without prejudice for failure to submit a proposed amended complaint as required by the Court's Local Rules of Practice.

(Dkt. No. 13, Attach. 3, at 11 [Pl.'s Opp'n Mem. of Law].)[8]  "While Federal Rule of Civil

Procedure 15(a)(2) requires district courts to freely grant leave to amend 'when justice so

requires,' a district court may nonetheless decline to grant such leave 'for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Grabcheski v. Am.*

*Int'l Grp, Inc.*, 687 F. App'x 84, 87 (2d Cir. 2017) (quoting *TechnoMarine SA v. Giftports, Inc.*,

758 F.3d 493, 505 [2d Cir. 2014]).  "A counseled plaintiff is not necessarily entitled to . . .

replead[] whenever he has indicated a desire to amend the complaint"; rather, the determination

involves the appraisal of several factors including whether the plaintiff's counsel has "made a

showing that the complaint's defects can be cured." *Porat*, 464 F.3d at 276; *see also F5 Capital*

*v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding the district court's finding that amendment

would be futile in a situation where the plaintiff requested leave to amend in its opposition to the

motion to dismiss in the event that the complaint was found to be insufficient because the

---

[8]        Plaintiff lacks the right to amend her operative pleading "as a matter of right"
pursuant to Fed. R. Civ. P. 15(a)(1) because (1) she did not file a cross-motion to amend within
21 days of service of Defendants' motion under Fed. R. Civ. P. 12(b), and (2) in any event, her
operative pleading was already amended in state court.  *See, e.g., Charla G. Aldous, P.C. v.
Lugo*, 13-CV-3310, 2014 WL 3952670, at *6 (N.D. Tex. Aug. 12, 2014) (reasoning that where
"Plaintiffs had already amended once" in state court, "they could not file an amended pleading
without Defendants' written consent or leave of court"); *Guthrie v. Wells Fargo Home Mortg.
NA*, 13-CV-4226, 2014 WL 3749305, at *3 n.1 (N.D. Ga. July 28, 2014) ("Because Plaintiff
already amended her Complaint as a matter of right while the case was pending in the Superior
Court of Fulton County, she may not amend her complaint as a matter of right while it is pending
in this Court."); *Lee v. Wells Fargo Bank, N.A.*, 11-CV-1334, 2012 WL 6132510, at *1-2 (S.D.
Tex. Dec. 10, 2012) (finding that plaintiff should have sought leave of court prior to filing
amended complaint where plaintiff previously amended petition in state court); *Wright v. Chase
Home Fin. LLC*, 11-CV-0095, 2011 WL 2173906, at *3 (D. Ariz. June 2, 2011) ("Since plaintiff
already amended her complaint once as a matter of right in state court she must seek leave to
amend."); *Manzano v. Metlife Bank N.A.*, 11-CV-0651, 2011 WL 2080249, at *3 (E.D. Cal. May
25, 2011) ("Because plaintiff filed her First Amended Complaint in state court prior to removal
to this court, plaintiff already amended her pleading once as a matter of course. Thus, she could
not properly file the [second amended complaint] without first obtaining leave of court.").

plaintiff offered no clue how the defects identified could be cured through an amendment);

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)

("Our opinion today, of course, leaves unaltered the grounds on which denial of leave to amend

has long been held proper, such as undue delay, bad faith, dilatory motive, and futility . . . ").

      Here, Plaintiff has requested leave to amend only her Third and Fourth Claims.

However, she has failed to provide any indication of how she would attempt to cure the pleading

deficiencies in these claims if granted leave to amend.  As already discussed above in Part III.B

of this Decision and Order, in her opposition memorandum of law, Plaintiff merely repeated the

same vague allegations as in her Amended Complaint, i.e., that she required a shift change to

accommodate her child care needs as a result of becoming custodian of her grandsons; she did

not elaborate on what those obligations entailed or what hardships she faced as a result of her

current shift.  (Dkt. No. 13, Attach. 3, at 10-11 [Pl.'s Opp'n Mem. of Law].)  Moreover, the

Court has been unable to find any cases from within the Second Circuit holding that failure to

grant a request for a shift change constitutes an adverse action.  Finally, the sovereign immunity

defects plaguing her Second and Fourth Claims are substantive and not merely formal in nature,

rendering any amendment of those claims futile.  Under the circumstances, the Court finds that

any amendment of the Amended Complaint would be futile.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendants' motion to dismiss (Dkt. No. 12) is **<u>GRANTED</u>** such that

the following claims are **<u>DISMISSED</u>**:

    (1)    Plaintiff's Second Claim pursuant to the NYSHRL as to Defendants NYSOMH

          and CNYPC;

      (2)      Plaintiff's Third Claim pursuant to Title VII; and

      (3)      Plaintiff's Fourth Claim pursuant to the ADEA; and it is further

      **ORDERED** that **SURVIVING** this motion to dismiss is Plaintiff's First Claim pursuant to the FMLA, and her Second Claim pursuant to the NYSHRL as to the John/Jane Doe Defendants to the extent that those individuals are later identified and sued in their individual capacities;[9] and it is further

      **ORDERED** that this case is referred back to Magistrate Judge Dancks for the re-setting of pretrial scheduling deadlines.

Dated: April 24, 2018
      Syracuse, New York

                                  Hon. Glenn T. Suddaby
                                  Chief U.S. District Judge

---

[9]      The Court notes that Defendant did not seek dismissal of these claims in their motion.