UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE GIBSON,

                Plaintiff,

v.                                                        6:17-CV-0608
                                                       (GTS/TWD)
NEW YORK STATE OFFICE OF MENTAL
HEALTH; CENTRAL NEW YORK
PSYCHIATRIC CENTER; JOHN DOE(S);
and JANE DOE(S),

                Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

BOSMAN LAW FIRM LLC                    A.J. BOSMAN, ESQ.
  Counsel for Plaintiff
201 West Court Street
Rome, New York 13440

HON. LETITIA JAMES                       TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this employment discrimination action filed by Christine

Gibson ("Plaintiff") against the New York State Office of Mental Health ("NYSOMH"), the

Central New York Psychiatric Center ("CNYPC"), and John Doe(s) and Jane Doe(s)

(collectively "Defendants"), are the following two motions: (1) Defendants' motion to dismiss

Plaintiff's second claim in her Amended Complaint, alleging that Defendants discriminated

against her in matters related to employment in violation of the New York State Human Rights

Law ("NYSHRL"); and (2) Plaintiff's cross-motion to remand this action to state court. (Dkt. Nos. 35, 37.) For the reasons set forth below, Defendants' motion to dismiss is granted, and Plaintiff's cross-motion for remand is denied.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint[1]

Generally, in her Amended Complaint, Plaintiff alleges that she worked as a Security Hospital Treatment Assailant ("SHTA") for NYSOMH and CNYPC, and was discriminated against because of her gender and age. (Dkt. No. 2 [Pl.'s Am. Compl.].) Following the Court's Decision and Order of April 24, 2018, and its Amended Decision and Order of August 13, 2018, two claims remain in this action: (1) Plaintiff's claim that Defendants willfully denied her request for leave to care for her daughter under the Family Medical Leave Act ("FMLA") on or after February 28, 2013 (*id.* at ¶¶ 17-22); and (2) Plaintiff's claim that Defendants discriminated against her in matters related to her employment because of her gender and age in violation of the NYSHRL (specifically, that Defendants denied her request for a hardship accommodation in the form of a shift change in order to allow her to care for her grandsons, of whom she became the legal custodian in October 2015, while granting hardship accommodations for younger male employees, including other SHTAs) (*id.* at ¶¶ 9-13, 23-25).

---

[1] On August 9, 2016, Plaintiff filed her original Complaint in this action in Oneida County Supreme Court, asserting claims under the FMLA and NYSHRL. (Dkt. No. 35, Attach. 2; Dkt. No 35, Attach. 3, at ¶¶ 17-25 [Pl.'s Compl.].) With approval of the state court, Plaintiff filed an Amended Complaint on May 22, 2017, which included additional claims under Title VII and the ADEA. (Dkt. No. 35, Attach. 2; Dkt. No. 2, at ¶¶ 26-33 [Pl.'s Am. Compl.].) Pursuant to Defendants' petition for removal of June 2, 2017, this action was removed from the Oneida County Supreme Court to this Court on June 2, 2017. (Dkt. No. 1.)

### B.  Parties' Briefing on Defendants' Motion for Judgment on the Pleadings

#### 1.  Defendants' Memorandum of Law

Generally, Defendants argue that Plaintiff's second claim fails to state a claim upon which relief can be granted, because she has failed to allege facts plausibly suggesting that she suffered an adverse employment action. (Dkt. No. 35, Attach. 4, at 3-7 [Defs.' Mem. of Law].) More specifically, Defendants argue that the denial of a requested shift change does not constitute an adverse employment action under governing law. (*Id*. at 8-9.) They argue that claims under the NYSHRL are analyzed under the same framework as federal discrimination claims raised pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"), and that the Court has already dismissed Plaintiff's Title VII and ADEA claims in this action, for failure to state a claim. (*Id*. at 3-4.)

#### 2.  Plaintiff's Opposition Memorandum of Law

Generally, in her opposition to this motion, Plaintiff argues that she has alleged facts plausibly suggesting an adverse action by Defendants, in support of her second claim. (Dkt. No. 37, Attach. 2, at 7-10 [Pl.'s Opp. Mem. of Law].) She argues that courts have found that a shift change disrupting an employee's childcare might constitute an adverse action. (*Id.* at 10-11.) She further argues that her second claim thus satisfies the pleading requirements at this early stage of the litigation. (*Id*. at 7-8.) Plaintiff alternatively requests that, should the Court find that she has not alleged sufficient facts to allege an adverse action, she be permitted an opportunity to further amend her Amended Complaint. (*Id.* at 10-12.)

### 3. Defendants' Reply Memorandum of Law

Generally, Defendants assert three arguments in reply to Plaintiff's arguments. (Dkt. No. 38, at 3-5 [Defs.' Reply Mem. of Law].) First, Defendants argue that Plaintiff's reliance on cases in which an employer changed an employee's work schedule, and thereby interfered with existing childcare or other responsibilities, is misplaced. (*Id*. at 3-4.) They argue that in this case, Plaintiff is alleging that only Defendants' failure to change her schedule is an adverse action.

Second, Defendants argue that Plaintiff's second claim does not allege facts plausibly suggesting that Defendants' refusal to grant her request for a shift change objectively caused a negative effect that would rise to the level of an adverse action. (*Id*. at 4.)

Third, Defendants reiterate their argument that the legal standard for an adverse action is the same under New York State law as it is under relevant federal law (such as Title VII and the ADEA), and assert that they have found no New York State court decisions holding that denial of a shift change request rises to the level of an adverse employment action under New York State law. (*Id*. at 3-4.)

### B. Parties' Briefing on Plaintiff's Cross-Motion for Remand to State Court

#### 1. Plaintiff's Memorandum of Law

In her opposition memorandum of law, Plaintiff also submitted a cross-motion to remand this action to New York State Supreme Court. (Dkt. No. 37, Attach. 2, at 3-7 [Pl.'s Opp. Mem. of Law].) Generally, in support of her cross-motion, Plaintiff relies upon the doctrine that a federal court should refrain from exercising supplemental jurisdiction over state law claims when it has already dismissed the claims over which it had original jurisdiction. (*Id*. at 5-7.)

### 2. Defendants' Opposition Memorandum of Law

Generally, in their opposition to this cross-motion, Defendants argue that this Court still has original jurisdiction over Plaintiff's first claim, which alleges a violation of a federal statute, the FMLA. (Dkt. No. 38, at 4-5 [Defs. Reply Mem. of Law].) Therefore, Defendants argue, there is no reason for this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claim, and Plaintiff's motion for remand to state court should be denied. (*Id.*)

## II. GENERAL LEGAL STANDARDS[2]

### A. Motion to Remand to State Court

After a case has been removed from state court, a district court has a "continuing obligation to satisfy [itself] that federal jurisdiction over the matter before [it] is proper." *Shantz v. Union-Endicott Central School Dist.*, 18-CV-1315, 2019 WL 330510, at *4 (N.D.N.Y. Jan. 25, 2019) (quoting *Filsaime v. Ashcroft*, 393 F.3d 315, 317 [2d Cir. 2004]). This obligation exists because "[f]ederal courts . . . are courts of limited jurisdiction. Even where the parties are satisfied to present their dispute to the federal courts, the parties cannot confer subject matter jurisdiction where the Constitution and Congress have not." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). "The absence of such jurisdiction is non-waivable," and a court cannot decide a case not "properly within [its] subject matter jurisdiction." *Wynn*, 273 F.3d at 157. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

---

[2] Because Plaintiff's cross-motion to remand raises a jurisdictional question, the Court will address it first, in both its recitation of the legal standards and its analysis of the parties' arguments.

### B. Motion to Dismiss for Failure to State a Claim

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

6

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

7

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

## III. ANALYSIS

### A. Whether Remand to State Court Is Necessary or Appropriate

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' reply memorandum of law. (Dkt. No. 38, at 3-5 [Defs.' Reply

Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff's first claim is that Defendants interfered with the exercise of the statutory rights afforded to her by the FMLA. (Dkt. No. 2, at ¶¶ 17-22) [Pl.'s Am. Compl.].) Defendants have not moved to dismiss this claim, and it remains pending in this action. (Dkt. No. 33, at 18 [Amended Decision and Order filed August 13, 2018].) Because this first claim is federal, the Court has supplemental jurisdiction over Plaintiff's second claim. 28 U.S.C. § 1331; 28 U.S.C. § 1367(a); *see also Lepore v. New York Hotel Trades Council, Emp. Benefit Funds*, 05 Civ. 6165, 2005 WL 3030839, at *6 (S.D.N.Y. Nov. 10, 2005) (denying defendants' motion to dismiss NYSHRL claims for lack of subject-matter jurisdiction, where complaint included an FMLA claim). Even if the Court lacked federal question jurisdiction over Plaintiff's first claim, the Court would retain, and exercise, the discretion to exercise supplemental jurisdiction over Plaintiff's second claim, under the circumstances. Accordingly, there is no reason for the Court to remand this action back to New York State Supreme Court.

### B. Whether the Amended Complaint Alleges Facts Plausibly Suggesting that Plaintiff Suffered an Adverse Employment Action as to Her Second Claim

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 35-4, at 3-7 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

As Defendants correctly argue, claims of employment discrimination under the NYSHRL are analyzed under the *McDonnell Douglas* framework that governs claims of employment discrimination under Section 1983 and Title VII and, "[u]nder New York law (as is true under federal law), a plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of her employment." *Spiegel v. Schulmann*, 604

F.3d 72, 80 (2d Cir. 2010); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576-77 (S.D.N.Y. 2011) (citing *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 446 [1999]); *see also Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 56 (2d Cir. 2016) (applying the same elements for establishing a *prima facie* case of discrimination to both the Title VII and NYSHRL claims); *Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) ("Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA."); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 219 (E.D.N.Y. 2014) (dismissing discrimination claims pursuant to Title VII and the NYSHRL where plaintiff could not show that she experienced an adverse employment action).

Therefore, to state a prima facie claim, Plaintiff's second claim must allege facts plausibly suggesting that she suffered an adverse action at the hands of the Defendants. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (indicating that, to state a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that [1] she belonged to a protected class, [2] she was qualified for her position, [3] she suffered an adverse employment action, and [4] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) ("To prevail on an ADEA claim . . . 'the plaintiff must first establish a *prima facie* case by showing membership in a protected class, qualification for the position, an adverse employment action, and circumstances that give at least minimal support to an inference of discrimination.'"). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *See Vega v. Hempstead*

10

*Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (applying this standard to a Title VII claim); *Galabya*, 202 F.3d at 640 (applying this standard to an ADEA claim). "'An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 [2d Cir. 2003]).

The Second Circuit has found examples of adverse employment actions to include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Id*. Here, Plaintiff alleges that Defendants' failure to grant her requested shift change to accommodate her child care needs was an adverse employment action. (Dkt. No. 2, at ¶¶ 9-15, 26-30 [Pl.'s Am. Compl.].)

In support of this argument, Plaintiff relies on cases in this Circuit that found that an employer's change to an employee's existing work schedule may constitute an adverse employment action when it disrupted the employee's existing or anticipated child care routine. (Dkt. No. 37, Attach. 2, at 8-10 [Pl.'s Opp'n Mem. of Law].) *See also Velazquez v. City of New York*, 16-CV-9606, 2017 WL 6948357, at *4 (S.D.N.Y. Dec. 13, 2017) (noting that "[a] shift change may be sufficiently adverse where, as here, a disrupted child care routine is the alleged outcome"); *Amador v. All Foods, Inc.*, 12-CV-1715, 2013 WL 1306305, at *5 (E.D.N.Y. Feb. 20, 2013) (finding that the plaintiff had sufficiently alleged an adverse employment action based on her transfer from the day shift to the graveyard shift immediately before she was to give birth); *Forsythe v. New York City Dept. of Citywide Admin. Servs.*, 733 F. Supp. 2d 392, 401 (S.D.N.Y. 2010) (finding a triable issue of fact where the plaintiff alleged an adverse employment action as a result of a "shift change [that] severely disrupted his child care routine and ability to spend time with his son").

However, Plaintiff alleges in this case that Defendants' *failure* to change her existing work schedule to accommodate changes in her childcare needs is an adverse action. The cases cited in support of Plaintiff's argument therefore do not suggest that this Court should find that Plaintiff has sufficiently alleged an adverse employment action based on Defendants' failure to grant her a shift change.

As Defendants argue, Plaintiff's Amended Complaint does not allege any facts plausibly suggesting that Defendants' refusal to grant her a shift change objectively caused a negative effect related to child care that would rise to the level of an adverse effect on the terms, privileges, or conditions of her employment. *See Goins v. Bridgeport Hosp.*, 11-CV-0560, 2013 WL 1193227, at *5 (D. Conn. Mar. 25, 2013) (finding a denial of a shift change to the day shift was not an adverse employment action because plaintiff "was not hired for day shifts; therefore, the denial of her requests did not constitute a change in her employment"), *aff'd*, 555 F. App'x 70 (2d Cir. 2014); *Harris v. City of New York*, 03-CV-1593, 2006 WL 2034446, at *4 (E.D.N.Y. July 17, 2006) (finding that the plaintiff failed to establish an adverse employment action based on denials of her requests for a shift change because, although she alleged that the denial prevented her from "meeting her needs as a single parent creating a serious hardship,". . . . "[s]uch subjective, personal disappointments do not meet the objective indicia of an adverse employment action") (internal quotation marks omitted); *Bunis v. Runyon*, 94-CV-2063, 1997 WL 639241, at *3-4 (S.D.N.Y. Oct. 16, 1997) (finding that the plaintiff had not offered any evidence to show that denial of a shift change adversely affected the terms, privileges, duration, or condition of her employment and therefore had not shown that the denial was an adverse employment action). Rather, Plaintiff alleges merely that Defendants denied her request for a

hardship accommodation allowing her to be scheduled on the day shift after she became the legal custodian of her grandsons in October 2015. (Dkt. No. 2, at ¶¶ 9-12 [Pl.'s Am. Compl.].) This allegation does not rise to the level of an adverse action under the NYSHRL. *See Lee v. New York State Dep't of Health*, 98-CV-5712, 2001 WL 34031217, at *17 (S.D.N.Y. April 23, 2001) (denial of plaintiff's request to work a "compressed work hour schedule" did not constitute an adverse employment action under Title VII or NYSHRL).

Because Plaintiff's Amended Complaint does not allege facts plausibly suggesting that she suffered an adverse employment action, she has not stated a NYSHRL claim upon which relief can be granted. Therefore, the Court finds that Defendants' motion to dismiss Plaintiff's second claim should be granted. The only claim remaining in this action is Plaintiff's first claim, i.e., her claim that Defendants violated the FMLA when they willfully denied Plaintiff's request for leave to care for her daughter on or after February 28, 2013. (Dkt. No. 2, at ¶¶ 17-22 [Pl.'s Am. Compl.].)

    **C.**  **Whether the Above-Described Dismissals Should Be Only Without Prejudice**

Although Plaintiff did not file a motion to amend, she did request in her opposition memorandum of law that, if the Court finds that her second claim fails to state a claim, she be permitted leave to amend this claim to correct any identified deficiencies. (Dkt. No. 37, Attach. 2, at 11-12 [Pl.'s Opp'n Mem. of Law].) Plaintiff made a similar request in response to Defendants' successful motion to dismiss her Title VII and ADEA claims. (Dkt. No. 13, Attach. 3, at 11.) The Court's Amended Decision and Order of August 13, 2008, set out the legal standards applicable to such a request. (Dkt. No. 33, at 16-18 [Am. Decision and Order, filed August 13, 2018].) Because the parties' motion papers demonstrate an accurate understanding of those relevant legal standards, the Court will not repeat them in this Decision and Order, which is intended primarily for the review of the parties.

In her request for leave to amend her second claim, Plaintiff has failed to provide any indication of how she would attempt to cure the pleading deficiencies discussed above in Part III.B of this Decision and Order, if granted leave to amend.  Plaintiff has merely repeated the same vague allegations as in her Amended Complaint, i.e., that she required a shift change to accommodate her child care needs as a result of becoming custodian of her grandsons; she did not elaborate on what those obligations entailed or what hardships she faced as a result of her current shift.  (Dkt. No. 37, Attach. 2, at 7-11 [Pl.'s Opp'n Mem. of Law].)  Moreover, the Court has been unable to find any cases from within the Second Circuit or from New York State courts holding that failure to grant a request for a shift change constitutes an adverse action.  In fact, those cases that address the issue have held the opposite.  Under the circumstances, the Court finds that amendment of the Amended Complaint would be futile.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 35) is **GRANTED** such that Plaintiff's second claim pursuant to the NYSHRL is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's cross-motion for remand to state court (Dkt. No. 37) is **DENIED**; and it is further

**ORDERED** that this case is referred back to Magistrate Judge Dancks to determine what, if any, discovery needs to be completed and for the re-setting of pretrial scheduling deadlines.

Dated: March 12, 2019
      Syracuse, New York

                                      Hon. Glenn T. Suddaby
                                      Chief U.S. District Judge